Good morning, may it please the court. I'm Roger Loewenstein. I'm the attorney for Maureen Kallins. I think the place to begin is to say that this is a fairly simple case on the law because essentially what happened here is that when we look at the adjudications below, which were the only ones before this court, adjudications by the trial court, essentially 50 years of Supreme Court jurisprudence has been turned on its head. And the trial court believed that he had the legal right to eliminate an essential element from the crime of criminal contempt and prosecute Ms. Kallins as a summary contemnor without the necessity of proving that what she did in any of the instances actually threatened to disrupt the orderly processes of the criminal trial. This is a case bound by AEDPA, correct? Oh yes, absolutely. Okay, so as you address your comments, if you'll explain how your argument meets the standard of demonstrating that the state court's decision meets that high threshold of an unreasonable application of Supreme Court precedent. It's not just unreasonable, it's objectively unreasonable. Well, let me start this way. There are three standards of AEDPA and all three have been violated by Judge Horner. But the one I'm addressing first, the most obvious one, is the contrary to Supreme Court law. That's the very first prong. I think most of the AEDPA litigation has been with the second prong, which is the application of law in an objectively unreasonable manner. And then there's the third prong, which has to do with just getting the facts wrong. And I forget the exact language of the third prong in AEDPA, but it's an unreasonable application of the factual case. All three apply here, but the simplest one is to start looking first at the contrary to phrase. I mean, the summary contempt is unlike proportionality in sentencing or jury coercion. In some of the other contexts in which AEDPA has been litigated recently, summary contempt is pretty clear what the rules are. And we have a 50- or 60-year Supreme Court history that tells us gradually summary contempt has become more and more isolated and disfavored in the law. And so we get down to what I call in the brief a trilogy of cases, McConnell, Wilson, and then Pounders, which tell us very clearly what is the law of summary contempt. And Judge Horner just simply got it wrong. What he said before the trial even began was that if one of you lawyers in this case commits an act of contempt, I'm going to apply the rule of Pounders v. Watson, and that is the standard that I'm going to apply. In other words, he announced ahead of time that every contempt, if it occurred in the trial, was going to be governed by the law of summary contempt as opposed to the law of contempt. And when he applied the rule of Pounders v. Watson, he said, What exactly is wrong with that for something that occurs in the midst of trial? What's wrong with announcing that? Well, something that's only one of the elements. If it occurs in the presence of the trial judge, that's a direct contempt, not a summary contempt. That's a direct contempt which sets the predicate for possibly treating it in a summary fashion. But the second element of summary contempt is not only must it occur in front of the judge, it also has to be such a disruption of the orderly processes of the trial that it requires instant penal action on the part of the court in order to vindicate the trial court's validity of the process. It seems to me that the trial judge was actually doing even more than he had to do by telling people ahead of time, I know what the governing Supreme Court case is, and if you guys mess up in the trial, that's the case that I'm going to follow. The Supreme Court of the United States has said that more and more, and this is, I'm quoting from the Bloom case, that more and more trials of contempt are looking more like regular criminal trials. In other words, it's a criminal prosecution, and due process requires a hearing. It allows for counsel. It allows for witnesses to be produced, examined, and cross-examined. That's what a contempt hearing is all about. You're not allowed to have a jury unless the prosecution is going to ask for punishment greater than six months. But other than having a jury, it's looking more and more like a criminal trial. Summary contempt, however, is the rare exception. That's the Pounders case. That's Wilson. That's the case that McConnell is describing. Those are the rare exceptions where something is happening in court that is so egregious that it requires instant action and instant correction. And I think if we look at the facts of the Wilson case, which controlled Pounders, which in turn controls this case, it becomes clear what are the kinds of egregious factual circumstances that allow for summary contempt, as opposed to garden variety contempt, or a contempt such as Ms. Callan's may arguably have committed, although I would say not, that would require a hearing. What's the touchstone to differentiate what you call garden variety contempt from egregious summary contempt, and why did her acts not fall within the summary? Fine. I think the best way to answer that is to look at the facts of those cases in which the Supreme Court of the United States says, yes, this counts as summary contempt. If I can mention the facts in Wilson, here you have a prosecution that is depending for its very effectiveness, witnesses who have been granted immunity, who were co-felons with the defendant on trial. So the witnesses are brought forward. They refuse to testify on the grounds that it would incriminate them. They're given immunity, and they still refuse to testify. That destroys the prosecution immediately. One question, what happened here? I refuse to answer. Boom. Summary contempt because the whole case collapses. That's an egregious example. It might have been done very politely and very soft-spokenly, but it destroyed the case. Pounders, exactly the same scenario, where you have a case that Judge Pounders described as hanging in a precarious balance, where you have one gang member who is accused of killing another gang member, that if the jury were to know that he faced life imprisonment without possibility of parole, they would nullify. Is it your position that disruption without affecting the substance directly can't be summary contempt? Is that the distinction you're trying to draw? Well, I think there has to be some kind of obstruction or disruption amounting to some kind of obstruction of the orderly process which prevents the trial or threatens the very foundation of the trial for moving forward. If we look at what happened here, take the very first contempt that's before this Court, you have a 45-minute mistrial motion out of the presence of the jury that in which Ms. Collins was invited to address the Court, and she, out of the presence of the jury, after having made an objection which the Court refused to deal with on the merits, an accurate and completely ---- Do the cases require that the statements be made in the presence of the jury? I would think that things could be so outrageous out of the presence of the jury that you could still have summary contempt. I mean, if I pulled a gun and started shooting it up, even though there's no jury, I would think that that isn't the rule. But I think that out of the presence of the jury gives us some context for finding out whether the orderly procedure of the trial is being disrupted or not. Here we have effectively a sidebar or out-of-the-presence-of-the-jury argument invited by the Court, brought on by an objection by Ms. Collins that was correct in the law and the Court refusing to deal with the merits of the case and deferring to the prosecutor who says, no, that's a speaking objection, a dreaded speaking objection, and that only ---- That's contrary to the order of the Court. I mean, the Court had issued an order saying, no, speaking objections, and ---- It wasn't a speaking objection. Well, what he was finding, what he found was that, well ---- He said it was a speaking objection, but it wasn't. Right, right. But he found that it was a speaking objection, and we're under the ADPA standard and reading the transcript, you know, we have to look at that. But anyway, he found that ---- I mean, he found that that had to be addressed outside the presence of the jury, and then I believe that's the one where there was some kind of a diatribe that ---- Exactly what he said was to the jury, I think we'll have a little hearing outside of the presence of the jury. He made a condescending remark, without dealing with the merits, we're going to have a little hearing now, and ---- That's a condescending remark? Well, Judge Henderson found it to be a condescending remark, and I agree that it certainly was. There was no need to dismiss the jury at that point. She had made a legitimate objection based on the failure of the witness to recollect from her statement, and she was unable to get to the merits. But what happened after that is very much like the McConnell case. McConnell said to the trial judge, I will not sit down until a bailiff drags me down. Now, that's worse than anything that Maureen Collins said in the entire trial. The judge ordered McConnell not to ask the question. He asked it anyway, and when the judge ordered him not to ask it again, I will continue to ask this question until a bailiff drags me down. That's the Supreme Court ---- Well, we're talking about the first contempt order, right? Okay. I'm trying to put it in the context of Supreme Court. Right. But I guess then my question for you is, why doesn't that first contempt order, which cited Ms. Collins' disrespectful and loud comments made directly to the court in open court, a permissible application of Pounders, which talked about preserving order? Pounders was not about order. Pounders is about preserving the integrity of the trial itself. That prosecution was destroyed by that question that Penelope Watson said. As soon as Penelope Watson said to that witness, you're facing life without possibility of parole, aren't you? Well, Ms. Collins also did that later on, and I guess that was the third or fourth contempt orders. I can address that. You want me to address that now? Well, I don't know. You can do whatever order, but I think it would be important, and you're running out of time, too, to talk about the specific orders. There are no incidents of Maureen Collins' comments that shouldn't have better been handled by an embroiled judge referring it to a hearing by another judge, just like the Ninth Circuit has said in the case that I appended to my brief, notice, hearing, and the ability for an attorney to represent Maureen Collins. Take the summation one that Your Honor just mentioned. She said in her summation that if it weren't for police conspiracies, then no defendant would be released from prison based on the work of the Innocence Project or some such efforts or the Northwestern law students who get people out of jail. She didn't refer to this defendant, and the judge completely missed that point and accused her of mentioning penalty in this case again. She was simply referring to the concept of police conspiracy, which was a legitimate defense in the case. It was factually based. She could sum up on that. The prosecutor said there can't be a police conspiracy. There are too many people involved. It was an issue in the case, and she said if there can't be police conspiracy, then no one would ever get out of prison based on rigged testimony based on the Innocence Project. That's perfectly legitimate commentary. And the Court heard the word prison and said summary contempt. And that's the problem with summary contempt. If you don't have a hearing or a process by which people can argue things such as the semantic language that was used or what's an appropriate comment to be made in summation or what's fair and what isn't fair, this is not an appropriate case for summary contempt. None of this is. And so there was no finding by Judge Horner that there was an obstruction of any kind, which was his legal obligation under the cases. He simply said Pounders turned contempt law on its head and made every contempt a summary contempt, and I don't have to find an obstruction simply because I entered an order pretrial. Counsel, you have used up all your time. We will restore a minute or so for your rebuttal. If there's a minute I could have in response, I would appreciate it. Thank you. May it please the Court. My name is Gerald Engler. I'm a Deputy Attorney General for the State of California, representing the State or technically the Superior Court in this case. In this case, we had a State trial judge who, in my opinion or in the State's view, went to extraordinary efforts to educate himself as to what controlling law was, announced before trial what his view was of the controlling law and the procedures he intended to follow. I think it would come as a great surprise to Judge Horner were he now to be told that his explicit efforts to follow Pounders v. Watson and the other cases that he cited in his order were, in fact, contrary to the controlling United States Supreme Court precedent in this case. I think Petitioner goes to great efforts to attempt to distance herself from Pounders v. Watson. And even, again, in this argument today, we've heard comments such as the summary contempt is disfavored, narrowly construed, and I don't disagree with any of those general propositions. This is not something that any court wants to see happening on a daily basis, a routine basis. But it is something that the Supreme Court has recognized. It's something that they permit. I think the very language that they talk about in Pounders, giving flexibility to the State trial judge, is one that this case falls well within Pounders and the many other cases cited in Pounders v. Watson. As an example, where contumacious conduct needs to be dealt with summarily. One issue that came up during Petitioner's argument is, well, what differentiates, or I think the word that Judge Graber used, what's the touchstone that differentiates run-of-the-mill contempt that can be dealt with in a separate proceeding before a separate fact finder versus conduct that needs to be dealt with in a summary fashion. And I believe that the Supreme Court cases discussing this very issue talk about the ongoing nature of the trial. The courts need to control the proceedings during the trial itself. And, yes, Pounders and the other cases talk about the disruptive nature of the conduct. I think I would, if I was simply here arguing that a counsel's rude comments would support a summary contempt, we'd be hard-pressed to uphold that. Or even to, as an example, the Kern case, the Kern County case, Little v. Kern County, perhaps this Court's most recent ruling in the area of contempt, at least as it relates to State court findings. There you had conduct that arguably incurred in trial, although there was a strong indication that what the judge was really concerned about were these insulting caricatures or drawings that never affected the trial at all. And the contempt proceeding itself doesn't happen until months and months. I think it was nine months after the trial. There, there's obviously no effect on the trial itself. If there were, presumably the judge would have felt the need, the trial judge in that case, would have felt the need to do something at the time. Here we have a long trial, a trial that's going over a number of months and over a number of weeks. I think the total time is just a little over a month. Repeatedly during this trial, many instances of disruptive, disobedient, or contumacious conduct during the trial. Now, the trial judge is faced with this prospect. He has to or he desires to bring that trial to a fair conclusion for all the parties. Now, if he simply ignores this conduct or does nothing about it or refers it to a different judge, I don't see how Judge Horner could have had any hope of controlling that trial and bringing it to a fair resolution within the rules of conduct that he had set forth. In other words, we say that a trial judge can insist that rules of the quorum, rules of evidence, and so on and so forth, be obeyed. And we say that he can insist on enforcing those during the trial itself. But when it comes right down to, okay, now can I enforce them with a summary contempt, the petitioner is saying, well, no, he couldn't do that. He had to just set it aside, let the trial proceed. I don't understand what remedies a trial judge would have in a case such as this to bring the trial to an orderly conclusion if summary contempt is removed. Having said that, that's perhaps even a step removed from where this Court and where the federal courts find themselves. Under the Eighth, this is not a de novo review. And as the Court knows, the question is not would this Court have considered Ms. Callan's comments a speaking objection or would this Court have considered Ms. Callan's comments about prison or throwing a life away or what have you. Would this Court have considered them contemmation? As Judge Henderson said time and time again, both in his written order and in the argument that we had before him, that's simply not the question. The question is, was Judge Horner's ruling in any respect contrary to controlling the United States Supreme Court president? We submit that it was not. Was it a un un was were any of Judge Horner's rulings an unreasonable application of controlling Supreme Court precedent? And again, we submit across the board the four contemptuous findings are all supported by the record and reasonably apply controlling Supreme Court precedent. The third and fourth orders of contempt both refer to closing argument and the references to punishment or prison. And I understand that Judge Horner did include within his pretrial order a preclusion of any mention of penalty or punishment. He repeated that for the closing argument. I can understand an order like that in the context of a Pounder's case where you're concerned about jury nullification. Why did he make any such order here? I mean, it seems to me nullification is highly unlikely in the context of someone accused of being a serial rapist. So why impose that limitation, which seems to be an invitation for trouble? I think the short answer, Judge Clifton, is that under California law, that's a standard instruction that's given in every criminal trial. I think the number is 17.42 of our pattern instructions. There's established state law that whatever the circumstances, counsel is not supposed to refer to penalty. Whether in doing so would be inviting, you know, I guess today's example would be the three strikes case where perhaps the defense attorney wants to get out there the possibility that this is a three strikes case. On the other hand, another variety of the, you know, not referring to punishment argument is the prosecutor's, you know, let's get this animal off the street in some sort of serious crime. So it cuts both ways. It's a rule that's across the board. Judge Horner had reason to believe and published authority that for whatever reason, Ms. Callins has made it a habit of injecting punishment or the topic of punishment into her closing arguments. The reported case, People v. Chong, it's right in there. And that was, again, a very serious case. So I don't know why Ms. Callins feels that this is a benefit to her client to do this. Again, when you're getting 12 people together on a jury, the old saw is that the defense only needs one of those. So perhaps during jury selection, you know, you look for that one that you think just is going to be reluctant to throw a life away, so to speak. And that's speculation. I don't know why Petitioner believes that this is to her advantage to do so, but she does. Judge Horner told her not to do it. California state law says you can't do it. And under those circumstances where Judge Horner then had to, you know, call a halt to the proceedings, take up court time out of the presence of the jury to deal with this conduct, it was certainly disruptive and it was certainly in disobedience of the court's orders. My question is under California or federal law, are there any constraints on the nature or extent of punishment once a contempt has been found? It seems to me five days for each one of these in jail seems a little bit much, but I didn't see any statutory authority or any federal authority that seems to put any limits. I don't know if you're aware of any. I will answer your question directly. Before I do that, I'll give the indirect answer that that's not an issue in this case. I understand that, but no one's raised it. Having said that, I'm not aware of any. The limitations, the constitutional limitation would be six months. I mean, you certainly can't, once you get to more than six months, then it has to be a jury trial under the federal constitution. California law is actually somewhat more restrictive than federal law under this, and the leading case is Boyce v. Superior Court, which is based on state statutes. I don't know if there is a day limit, but I would concede that this is certainly one of the longer contempts that one would see in the reported case law, certainly. Unless there are any further questions, we're prepared to submit it. There appear to be none. Thank you. Thank you. We will restore a minute of rebuttal time for you. The California state statute puts a limit of five days. That's the maximum penalty, so the judge went automatically to the max. That was his, and he held them to be consecutive. So whatever his limit was, he went to it with Ms. Callins. I think that the issue of mentioning prison in an eight-hour summation more than one time, we have to put this case in the context of this particular defendant. The jury well knew that this defendant had been waiting in prison for five years, waiting for trial, and the prosecution had mentioned prison twice in his summation without any comment or objection. And it was clear to the jury because a key witness in the trial was a prison guard who was brought in to testify that this defendant had masturbated in front of this female prison guard, and when she wrote him up, he threatened her life and that she believed the threat because she testified that he was in a cell that was limited to gang members only, so she believed that the threat had credibility. Now, you might be asking, what in the world did this have to do with the rape that occurred five years earlier? But this is the context in which this case came up. This judge allowed this kind of testimony, this kind of evidence about prison, and the jury rightfully hated this defendant. And the judge and prosecutor ganged up on this particular lawyer who was ganged up on by her own client. There were three Marsden motions during the trial. The point I'm making is if habeas corpus doesn't exist for the least favored litigant, as Maureen Callins is defending the even less favored clients, then we should just give up. Then we should say EDPA, you know, gets rid of habeas corpus because if it doesn't apply here, it isn't going to help anybody. And, you know, if Abraham Lincoln can't let Confederate spies out of prison, you know, we should respect habeas corpus as a great writ. Thank you, counsel. We appreciate the arguments of both parties. And the case just argued is submitted.
judges: Graber, Wardlaw, Clifton